CRAWLEY, Judge.[1]
LPP Mortgage, Ltd. (LPP), sued Michael Russell, Eron Russell, and Agnes Wambles alleging that they had breached personal guaranty agreements securing a promissory note executed in favor of the Small Business Administration (“the SBA”); the SBA had assigned the promissory note, a mortgage securing the promissory note, and the personal guaranty agreements to LPP mortgage. LPP Mortgage moved for a judgment as a matter of law (“JML”) both at the close of its ease-in-chief and at the close of all the evidence. Both motions were denied. The jury returned a verdict in favor of all the defendants. The trial court entered a judgment based on that verdict. LPP Mortgage timely appealed the trial court’s denial of its motions for a JML. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala. Code 1975.
Our supreme court has stated:
‘When reviewing a ruling on a motion for a JML, this Court uses the same standard the trial court used initially in granting or denying a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala.1992). For actions filed after June 11, 1987, the nonmovant must present ‘substantial evidence’ in order to withstand a motion for a JML. See § 12-21-12, Ala.Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmov-ant and entertains such reasonable inferences as the jury would have been free to draw. Motion Industries, Inc. v. Pate, 678 So.2d 724 (Ala.1996). Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court’s ruling. Ricwil, Inc. v. S.L. Pappas & Co., 599 So.2d 1126 (Ala.1992).”
Delchamps, Inc. v. Bryant, 738 So.2d 824, 830-31 (Ala.1999).
When the terms of a contract are unambiguous, the construction of the contract is a question of law for the court. Colonial Bank of Alabama v. Coker, 482 So.2d 286 (Ala.1985). Although LPP Mortgage made no postverdict motion pursuant to Rule 59, Ala. R. Civ. P., we may nonetheless review the trial court’s denial of LPP Mortgage’s motions for a JML because “repeated adverse rulings on pure questions of law are not ordinarily required for appellate review of those same issues.” Barnes v. Dale, 530 So.2d 770, 777 (Ala.1988).
The record reveals the following facts. Russell Cash and Carry, Inc., borrowed $111,000 from the SBA. Michael Russell, *526 as president of Russell Cash and Carry, Inc., executed a promissory note in favor of the SBA on May 24, 1990. Subsequently, to guarantee payment of the promissory note, Michael Russell and Eron Russell granted the SBA a mortgage on real property they owned in Coffee County and they executed a personal guaranty agreement. The personal guaranty agreement provided:
“The Undersigned [Michael Russell and Eron Russell] hereby grant[ ] to Lender [the SBA] full power, in its uncontrolled discretion and without notice to the undersigned, but subject to the provisions of any agreement between the Debtor [Russell Cash and Carry, Inc.] or any other party and Lender at the time in force, to deal in any manner with the Liabilities and the collateral, including, but without limiting the generality of the foregoing, the following powers:
“(a) To modify or otherwise change any terms of all or any part of the Liabilities or the rate of interest thereon (but not to increase the principal amount of the note of the Debtor to the Lender), to grant any extension or renewal thereof and any other indulgence with respect thereto, and to effect any release, compromise or settlement with respect thereto.
“(b) To enter into any agreement of forbearance with respect to all or any part of the Liabilities, or with respect to all or any part of the collateral, and to change the terms of any such agreement.”
In 1993, the Russells sold the business to Elba Cash and Carry, Inc., Kenneth Grantham, and Raymond Rice. As part of the purchase of the business, an assumption-of-liability agreement was signed by Grantham, individually and as president of Elba Cash and Carry, Inc.; by Rice, individually; and by Agnes Wambles, Grant-ham’s mother. Pursuant to the assumption of liability agreement, Elba Cash and Carry, Inc., Grantham, and Rice assumed the outstanding indebtedness owed under the promissory note and acquired the Russell’s interests in the real property securing the promissory note, subject to the mortgage in favor of the SBA. Contemporaneously with the assumption-of-liability agreement, Wambles signed a personal guaranty agreement, with the same provisions as the one signed by the Russells, in favor of the SBA.
Elba Cash and Carry, Inc., and Grant-ham subsequently sought to borrow $425,000 from Covington County Bank. Rice was no longer involved in the business. The SBA was to be a minority participant in that loan, providing 15% of the funds. However, Covington County Bank would agree to the loan only if Elba Cash and Carry, Inc., and Grantham would execute a mortgage in favor of Covington Bank on the real property securing the promissory note in favor of the SBA and the SBA would agree to subordinate its mortgage to the mortgage in favor of Cov-ington County Bank. Neither the Russells nor Wambles was notified of the subordination agreement.
Elba Cash and Carry, Inc., and Grant-ham defaulted on the loans from Coving-ton County Bank and the SBA. The bank foreclosed on the property, purchased the property at auction, and subsequently sold it to a third party. The proceeds from the sale were not sufficient to pay off the debt secured by the mortgage to Coving-ton County Bank, much less the outstanding debt owed to the SBA under its promissory note and mortgage. After the foreclosure and sale, the SBA assigned the promissory note, mortgage, and personal guaranty agreements to LPP Mortgage. The assignment included:
*527 “such other documents, agreements, instruments and other collateral that evidence, secure or otherwise relate to Assignor’s right, title, or interest in and to the MORTGAGE and/or the Note...
LPP Mortgage sued the Russells and Wambles in an attempt to collect on the debt owed under the promissory note and their personal guaranty. The jury, however, returned a verdict in favor of the Rus-sells and Wambles. The trial court entered a judgment on the jury’s verdict. LPP Mortgage argues that the trial court erred in denying its motions for a JML. We agree; therefore, we reverse the judgment of the trial court.
“[T]he consent of the mortgagor is unnecessary to effect a change in the order of priority as between a mortgagee and the holder of any other outstanding interest in the property, such as another mortgagee, a lessee, or a lienholder.”
Oakes v. Michigan Oil Co., 476 So.2d 618, 622 (Ala.1985). Furthermore, the personal guaranty agreements signed by the Rus-sells and Wambles specifically authorize the SBA “to deal in any manner with the Liabilities and the collateral” and “to grant any extension or renewal thereof and any other indulgence with respect thereto” without notice. The SBA, pursuant to those provisions, subordinated the mortgage in favor of the SBA to the mortgage in favor of Covington County Bank.
The Russells and Wambles voluntarily entered into the guaranty agreements. We recognize that had the priority of the mortgage in favor of the SBA not been subordinated, the Russells and Wambles would be in a far superior financial position to the one they are in now. Absent the subordination agreement, the debt to the SBA that the Russells and Wambles personally guaranteed would have been satisfied first out of the foreclosure sale.[2] However, the principal amount that the Russells and Wambles personally guaranteed has not been increased, and they must now face the legal consequences of having failed to repay the indebtedness covered by their guaranty agreements. See Graydon v. Colonial Bank-Gulf Coast Region, 597 So.2d 1345 (Ala.1992); Oakes v. Michigan Oil Co., 476 So.2d 618, 622 (Ala.1985).
REVERSED and REMANDED.
MURDOCK, J., concurs in the result, with writing, which THOMPSON and PITTMAN, JJ., join.
YATES, P. J., dissents, with writing.

. This case was originally assigned to another judge on the Court of Civil Appeals. It was reassigned to Judge Crawley on November 18, 2004.

. The appellant does not address the subject of redemption.